LANA GRANT,

        Plaintiff,

v.

        Case No. 24-cv-411-pp

HENKEL CORPORATION,

        Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT**

On April 4, 2024, the plaintiff—who is representing herself—filed a complaint alleging that the defendant, her former employer, discriminated against her on account of her race in violation of Title VII of the Civil Rights Act of 1964. Dkt. No. 1. She also filed a motion to proceed without prepaying the filing fee. Dkt. No. 3.

To allow a plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must screen the complaint to determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i).

**I.    Plaintiff's Ability to Pay the Filing Fee**

The plaintiff's request to proceed without prepaying the filing fee says that she is unemployed, single and has a seven-year-old son for whom she provides support. Dkt. No. 3 at 1. She writes that she has no monthly salary or

1

wages and has received $514 in "EBT" in the past twelve months.[1] Id. at 2. She says that she pays $1,595 a month in rent and $100 a month in "[o]ther household expenses" for a total of $1,695 in monthly expenses. Id. at 2-3. She reports that she doesn't own a car or her home and doesn't have any cash or savings or other property of value. Id. at 3-4. The plaintiff states, "The abrupt loss of my job has since placed me in a domino[] effect of financial hardships including impe[n]ding homelessness with my small child." Id. at 4. On August 29, 2024, the court received a change-of-address notice from the plaintiff, asking that all mailed correspondence should be directed to a Milwaukee PO box. Dkt. No. 4.

Based on the information in the request, the court concludes that the plaintiff does not have the ability to pay the filing fee. This does not mean that the plaintiff does not owe the filing fee; the Seventh Circuit has held that "every . . . person who proceeds [without prepaying the filing fee]" is "liable for the full fees," because "all [28 U.S.C.] § 1915(a) does for any litigant is excuse the pre-payment of fees." Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997); see also Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without prepayment of fees,' but not without ever paying fees.").

---

[1] The United States Department of Agriculture's Food and Nutrition Service runs an electronic system called the Electronic Benefits Transfer (EBT) that allows recipients of the Supplemental Nutrition Assistance Program (SNAP) to pay for food using SNAP benefits; it's a bit like a debit card program. https://www.fns.usda.gov/snap/ebt.

**II. Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

The court next must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

    B.    <u>The Plaintiff's Allegations</u>

The plaintiff is suing her former employer, Henkel Corporation. Dkt. No. 1. Under "STATEMENT OF CLAIM," the plaintiff wrote:

> I began employment at Henkel Corporation as a chemical mixing specialist on December 12, 2022. On January 4, 2023 my trainer Amir Aganovic made multiple racial remarks towards me and made inappropriate jokes towards my race and stature. He told me that "its not his fault he's racist, he was raised that way by his father whom is in a wheelchair."
>
> Amir stated "Everything black people do is BAD" I told him his comments made me feel uncomfortable and unsafe. He laughed and

3

Case 2:24-cv-00411-PP    Filed 08/22/24    Page 3 of 8    Document 5

> said "I joke like that with my niece all the time and she's Black, well half black because both of my brother and sister date black people and now they have little black burned out babies and my father hates it!" he continued to say how he is the youngest child and the only child who intends to keep your bloodline pure by not dating anyone outside of his race he continued to say he doesn't know why they keep making it your obligation to train black people when they're so stupid they can't comprehend the job let alone the training I try to give.
>
> I immediately reported these comments and jokes to management and Human Resources. Subsequently, Amir A. exhibited intimidating behavior towards me which I also reported. At this time a new plant manager whom so happens to be one of Amir A's close associates was promoted as plant manager the same day Amir stated "I'm going to make your black ass get the hell out of here" When I went to report the comment the supervisors office was locked and I was approached the same day on 2/3/2023 and was fired on the spot.

Dkt. No. 1 at 2-3.

In Section C of the complaint, "JURISDICTION," the plaintiff marked the box reflecting that she is "suing for a violation of federal law under 28 U.S.C. §1331," but she also marked the box reflecting that she is suing "under state law" and that her state citizenship is different from the state citizenship of every defendant[2] (though she did not complete the field asking her to list the amount of money at stake in the case). Dkt. No. 1 at 4. Under "RELIEF WANTED," the plaintiff wrote:

> I would like the court to consider monetary compensation. I have succumbed to extreme depression, financial hardship and homelessness with a child due to my abrupt termination without just cause. I would like the court to consider granting 860,000 as monetary compensation regarding this case. Also if the defendants can take complaints made seriously and ensure proper

---

[2] It does not appear from the face of the complaint that this federal court has diversity jurisdiction. The plaintiff alleges that she lives in West Allis, Wisconsin and says that the defendant is in Oak Creek, Wisconsin. Dkt. No. 1 at 1-2. Even if the defendant is a citizen of a state other than Wisconsin, however, the plaintiff's claims sound in federal law, not state.

4

> investigations with any and all complaints regardless of who. No favoritism should be granted.

Id. at 4. The plaintiff attached to her complaint a January 11, 2024 Dismissal of Charge and Right to Sue letter from the U.S. Equal Employment Opportunity Commission. Dkt. No. 1-1.

C. Analysis

Although the plaintiff marked the box reflecting that she is suing for a violation of federal law under 28 U.S.C. §1331, the complaint itself does not cite to any federal statutes or federal constitutional provisions. That said, the plaintiff appears to allege a claim of discrimination based on race, and Title VII of the Civil Rights Act of 1964 prohibits—among other things—employment discrimination on the basis of race. 42 U.S.C. §2000e-2(a). To allege race discrimination under Title VII, the plaintiff must allege that "(1) [s]he is a member of a class protected by the statute, (2) . . . [s]he has been the subject of some form of adverse employment action (or that [s]he has been subjected to a hostile work environment), and (3) . . . the employer took this adverse action on account of the plaintiff's membership in the protected class." Abrego v. Wilkie, 907 F.3d 1004, 1012 (7th Cir. 2018) (citation omitted). The screening standard for Title VII employment discrimination claims is lenient: "a plaintiff need only allege enough facts to allow for a plausible inference that the adverse action suffered was connected to her protected characteristics." Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777 (7th Cir. 2022) (citations omitted).

The plaintiff alleges that while she was working for the defendant, her supervisor made multiple racist comments toward her, and that when she informed her supervisor that these racist comments made her feel "uncomfortable" and "unsafe," the supervisor continued to direct racist remarks toward her, referring to the remarks as "jokes." Dkt. No. 1 at 2-3. The

5

plaintiff alleges that she reported her supervisor's comments to management and human resources, after which her supervisor "exhibited intimidating behavior towards [her], which [she] also reported." Id. at 3. The plaintiff alleges that her supervisor then told her that he was going to get her "black ass" fired. Id. Accepting these allegations as true for the purposes of screening, the plaintiff has adequately alleged that the defendant terminated her employment on the basis of her race.

The plaintiff's allegations also may support two other Title VII claims: (1) a retaliation claim and (2) a claim for hostile work environment. To state a Title VII retaliation claim, a plaintiff "must plead that she engaged in a statutorily protected activity and was subjected to materially adverse actions as a result of that activity." Hatcher v. Bd. of Trs. of S. Ill. Univ., 829 F.3d 531, 536 (7th Cir. 2016) (citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 57 (2006)). Reporting a supervisor's race discrimination is an example of a statutorily protected activity. Fillmore v. Ind. Bell Tel. Co., 729 F. App'x 471, 473 (7th Cir. 2018) (citing Tomanovich v. City of Indianapolis, 457 F.3d 656, 663-64 (7th Cir. 2006)). Here, the plaintiff alleges that the defendant terminated her employment after she reported her supervisor's racist and intimidating behavior to management and human resources. Dkt. No. 1 at 3. These allegations suffice to state a Title VII retaliation claim.

Finally, to state a Title VII hostile work environment claim, a plaintiff must plead that "(1) she was subject to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty., 804 F.3d 826, 833-34

6

(7th Cir. 2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or per[vasive] to alter the conditions of employment such that it creates an *abusive* relationship." Id. at 834 (emphasis in original). Here, the plaintiff alleges that her supervisor made several racist remarks toward her during her short employment term with the defendant, and when she told her supervisor that his comments made her feel uncomfortable and unsafe, the comments continued. These allegations give rise to a plausible Title VII hostile work environment claim.

### III.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The plaintiff may proceed on (1) a Title VII race discrimination claim; (2) a Title VII retaliation claim; and (3) a Title VII hostile work environment claim.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Henkel Corporation under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Henkel Corporation to file a responsive pleading to the complaint.

7

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court advises the plaintiff that if she fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on her failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. It is the plaintiff's responsibility to notify the court if she changes addresses; if she does not keep the court advised of her address the court may dismiss this case without further notice.

Dated in Milwaukee, Wisconsin this 22nd day of August, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**